JACK RUSSO (State Bar No. 96068)
TIM C. HALE (State Bar No. 114905)
RUSSO & HALE LLP
401 Florence Street
Palo Alto, CA 94301
Telephone: 650-327-9800
Facsimile: 650-327-3737
Email:  jrusso@computerlaw.com
Email:  thale@computerlaw.com

Attorneys for Plaintiff
AIRCRAFT TECHNICAL PUBLISHERS

FILED

07 AUG -6 PM 2: 43

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

(SAN FRANCISCO DIVISION)

**C 07 4026**

*RS*

| | |
|---|---|
| AIRCRAFT TECHNICAL PUBLISHERS, a California company,<br><br>Plaintiff,<br><br>vs.<br><br>NEW PIPER AIRCRAFT, INC., a Florida corporation; AVANTEXT, INC., a Pennsylvania corporation,<br><br>Defendants. | Case No.: _____<br><br>**COMPLAINT FOR DECLARATORY RELIEF AND SPECIFIC PERFORMANCE** |

RUSSO & HALE
LLP
Palo Alto, California

**Complaint**

1

Case No. _____

Plaintiff Aircraft Technical Publishers ("ATP") alleges against Defendants New Piper Aircraft, Inc. ("NPI") and Avantext, Inc. ("Avantext") as follows:

## NATURE OF ACTION

1.    This is an action for declaratory relief and specific performance based upon Defendant NPI's having denied the existence of its written and signed contract with Plaintiff ATP, and given ATP's *bona fide purchaser* rights under the Copyright Act (17 U.S.C. §204) to proceed with its copyright license despite a purported exclusive license having been granted to Defendant Avantext by Defendant NPI.

## PARTIES

2.    ATP is a California corporation with its principal office based in Brisbane, California. ATP is in the business of, and a worldwide leader in, the reproduction of information concerning the airworthiness requirements and other directives relating to non-commercial aircraft. Such information is used by aircraft owners, mechanics and others.

3.    Defendant NPI is, on information and belief, a Florida corporation with its principal office in Vero Beach, Florida. NPI is an aircraft manufacturer, and produces content relating to the maintenance and repair of its aircraft which it sells throughout the United States and in this District.

4.    Defendant Avantext is, on information and belief, a Pennsylvania corporation with its principal offices in Conshohocken, Pennsylvania. Avantext is in the same industry as ATP, and Avantext sells its products through the United States and in this District.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332 diversity of citizenship, as the amount in controversy exceeds the sum of $75,000 and as the parties are citizens of different states (i.e., Plaintiff ATP is located in California and Defendants are both located in

RUSSO & HALE
LLP
Palo Alto, California

**Complaint**                                    **Case No.** _____

1   other states).    Jurisdiction is also proper in this Court in that ATP's rights and claims herein arise

2   out of said Copyright Act, including but not limited to that portion that addresses conflicting

3   transfers of rights under 17 U.S.C. § 204. Venue is proper in this District in that ATP is located

4   here and the injury it complains of has been suffered here.

5

6                                          **STATEMENT OF FACTS**

7        6.        Effective starting September 1, 2005, ATP and NPI entered into a Microfiche

8   Production Agreement, whereby ATP provided certain microfiche reproduction services for NPI

9   (the "Agreement").  A true and correct copy of that Agreement is attached hereto as Exhibit 1.

10       7.        Sometime thereafter, ATP and NPI began negotiations seeking to enter a new

11  agreement or an amendment to the Agreement whereby ATP would obtain digital reproduction

12

13  rights and provide NPI with digital reproduction services as well the microfiche services addressed

14  in the Agreement.

15       8.        On June 16, 2006, ATP and NPI entered into an Amendment to the Agreement

16  providing ATP with the aforementioned digital reproduction rights, effective as of July 1, 2006 and

17  for sixty (60) months thereafter (the "Amendment").  A true and correct copy of the Amendment is

18

19  attached hereto as Exhibit 2.

20       9.        Despite the existence of the Amendment permitting ATP to reproduce digital

21  content belonging to NPI, on April 6, 2007, NPI "confirmed" by written notice an April 4, 2006

22  telephone notice that ATP "cease and desist" from digital distributions of NPI content "without

23

24  approval, without a contract, and without a license."

25       10.       On or about June 26, 2007, apparently after objections were received by Defendant

26  Avantext, NPI sent a demand letter to ATP complaining about the digital distributions which had

27  occurred, according to NPI, without NPI's authorization;  NPI claimed that ATP had "jumped the

28  gun" in commencing such digital distributions prior to entry into an appropriate amendment.  This

1   letter completely failed to recognize the existence of the Amendment, and the rights granted to

2   ATP thereunder.

3       11.     On or about July 13, 2007, ATP responded to the above letter, enclosed the

4   Amendment, and noted that there had been a verbal agreement reached in April 2006 between Ms.

5   Daly of ATP and Mr. Spires of NPI regarding continued digital distributions that did **not** directly

6   compete with Avantext.  The letter explained that this was a temporary compromise and that NPI

7   had failed to provide a required six (6) month notice to Avantext that would have terminated

8   Avantext's rights and removed any dispute.

9       12.     On or about July 26, 2007, NPI disputed the existence of the Amendment, claiming

10  that the signature thereon from Chris Spires of NPI was not genuine, and contending that Chris

11  Spires confirmed that he did not sign, did not verbally agree, and that no one at NPI could be

12  authorized to sign or verbally agree because of the exclusive relationship between NPI and

13  Avantext.

14      13.     On or about July 27, 2007, Carol Daniels of ATP attempted to reach NPI by phone

15  and the parties have attempted to resolve, though to no avail, their disputes and disagreements.

### FIRST CLAIM FOR RELIEF
**(Declaratory Relief Against NPI and Avantext)**

16      14.     Plaintiff ATP realleges each of the allegations of Paragraphs 1 through 13, above,

17  and incorporates the same by reference as if fully set forth herein.

18      15.     A dispute and disagreement has arisen among the parties with regard to their

19  respective rights and obligations in connection with digital reproduction of content belonging to

20  NPI.  While Plaintiff ATP has adhered to and continues to adhere to the Agreement and the

21  Amendment, Defendant NPI has denied the existence of the Amendment, and of ATP's rights

22  thereunder.

16.    On information and belief, Defendant Avantext also contends that ATP has reproduced digital content belonging to NPI without authorization and in derogation of rights that Avantext claims it has been granted by NPI on an exclusive basis.

17.    Contrary to the positions and demands of Defendants, ATP believes that it has at all times acted in accordance with the Amendment and Agreement, that it has in no way breached or interfered with any rights belonging to NPI or Avantext.  Further, even if Avantext had been granted certain rights by NPI, ATP had no notice or knowledge thereof, and, on information and belief, Avantext effected no copyright registration in connection therewith, such that under 17 U.S.C. Section 204, ATP has ongoing rights as a *bona fide purcha*ser to continue to act under the Amendment and Agreement.

18.    NPI and Avantext dispute ATP's rights as set forth above and assert that ATP is acting without authorization.  Unless and until a judicial determination of the parties' rights can be obtained, which determination ATP requests be expedited, the parties, as well as uninvolved third parties, will suffer irreparable harm.  ATP requests that this matter be set for trial at the earliest possible date.

## SECOND CLAIM FOR RELIEF
### (Specific Performance)

19.    Plaintiff ATP realleges each of the allegations of Paragraphs 1 through 18, above, and incorporates the same by reference as if fully set forth herein.

20.    Despite the existence of the Agreement, as modified by the Amendment, NPI has failed and refused to perform its obligation of providing ATP with ongoing digital content for ATP to reproduce pursuant to said documents.

21.    Said actions are causing ATP irreparable harm, and ATP is without an adequate remedy at law and without means to effect performance under the Amendment. ATP cannot fulfill

its ongoing obligations to and needs of its customers, customers who are in need of the NPI digital content. ATP has no other way of obtaining the digital content that NPI is obligated, but refusing, to provide to ATP.

22.    ATP is in need of and is entitled to a determination of specific performance, whereby NPI is ordered to continue to provide ATP with NPI's digital content pursuant to the Amendment to the Agreement.

## **PRAYER FOR RELIEF**

Plaintiff ATP prays for a declaratory judgment, specific performance and other relief against Defendants NPI and Avantext as follows:

A.    For a Declaratory Judgment that the Agreement is valid and remains in full force and effect;

B.    For a Declaratory Judgment that the Amendment to the Agreement is valid and remains in full force and effect;

C.    For a Declaratory Judgment that ATP continues to have rights under the Agreement and under the Amendment, independent of and despite the existence of any agreement between NPI and Avantext;

D.    For an order of specific performance whereby NPI is ordered to continue to honor the Agreement and the Amendment and to continue to make deliveries of the digital content and other deliverables thereunder;

E.    For a temporary, preliminary, and permanent injunction restraining Defendants from refusing to honor the Agreement and the Amendment and/or to from interfering with ATP's rights thereunder;

F.    For attorney's fees and litigation expenses as authorized by the Agreement and/or as otherwise authorized by law;

1    G.    For costs of suit herein; and,

2    H.    For such other and further relief as the Court deems just and proper.

3                                                    RUSSO & HALE LLP

4    Dated: August 6, 2007                           By: _Tim C Hale_

5                                                         Jack Russo
                                                         Tim C. Hale
6
                                                    Attorneys for Plaintiff AIRCRAFT
7                                                   TECHNICAL PUBLISHERS

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint                              7                Case No. _____

# Exhibit 1

# MICROFICHE PRODUCTION AGREEMENT

**PURCHASER:**       THE NEW PIPER AIRCRAFT, INC.
2926 PIPER DRIVE
VERO BEACH, FL 32960

**SELLER:**           AIRCRAFT TECHNICAL PUBLISHERS
101 SOUTH HILL DRIVE
BRISBANE, CA 94005-1203

This MICROFICHE PRODUCTION AGREEMENT (the "Agreement") is made and entered into by and between The New Piper Aircraft, Inc., a Delaware corporation, (the "Purchaser"), and Aircraft Technical Publishers, a California corporation (the "Seller").

IN CONSIDERATION of mutual covenants contained herein and other good and valuable consideration.

Purchaser and Seller agree as follows:

**ARTICLES:**

**A.**     **MATERIALS AND SERVICES**

Seller agrees to perform microfiche filming, titling, duplicating, collating and stuffing into sleeves as requested by Purchaser for the products and prices set forth in Exhibit "A" attached hereto and incorporated by reference. Said services shall include the furnishing of all required film, sleeves, quality of film, clarity of film, and format of document on film and other services reasonably in accordance with Exhibit "B" attached hereto and to the reasonable satisfaction of Purchaser.

Purchaser shall be solely responsible for the accuracy, understandability, completeness, organization, indexing and layout of all content and information reproduced on the microfiche covered by this Agreement. Seller shall have no liability for, and Purchaser shall pay Seller for, any materials that turn out to be deficient due to errors in such understandability, completeness, and so forth, unless such errors are caused by Seller.

Purchaser shall receive all materials produced by Seller as set forth in Exhibit "A" for exclusive use by Purchaser. Seller shall be responsible for any and all reproduction errors not associated with any errors as provided by Purchaser or found on the master. Reproduction of any material, in any form whatsoever, shall only be reproduced by Seller at direction of Purchaser. All materials are held confidential and proprietary to Purchaser.

**B.**     **PRICES**

Seller agrees to sell to Purchaser and Purchaser agrees to purchase from Seller the materials and services described in Exhibit "A" at the prices set forth therein. Seller reserves the right to make annual price adjustments to said listed prices due to price inflation of resources (i.e. cost of materials, labor, etc.) necessary to perform services described herein. Such annual increases shall not exceed the prior year's prices by more than five percent (5%). Seller shall notify Purchaser, in writing, certified mail/return receipt requested, no later than forty-five (45) days prior to the scheduled date of the anticipated price change.

Purchaser is responsible for all shipping related charges and shall reimburse Seller for any and all shipping related charges incurred by Seller for activities related to this Agreement. Seller shall have written approval from Purchaser as to the method of shipping. Should Seller incur delays with production, which necessitate expedited shipping to comply with the delivery time, the Seller shall be responsible for the difference in cost for the expedited shipment and the normal rate of shipment.

Seller _GPC_

Purchaser _____

**Page 1 of 6**

**C.**    <u>**PAYMENT**</u>

Seller shall provide on a monthly basis, to Purchaser an invoice reconciling all charges associated with this Agreement. Purchaser agrees to pay each invoice in full within 30 days of invoice date. Invoices will include Master fiche and fiche duplication volumes as well as shipping-related charges. All overdue amounts shall bear interest at 1% or the highest applicable statutory rate, whichever is less.

**D.**    <u>**PERFORMANCE**</u>

If either party fails to perform in accordance with this Agreement, the other party shall provide written notification describing specific areas of alleged failure. The alleged breaching party will have up to sixty (60) days from date of such notification to correct such performance failure. If the alleged breaching party fails to correct its performance, the other party may terminate this Agreement with a thirty (30) day written notice and pursue its remedies at law.

**E.**    <u>**EXPRESS WARRANTIES AND LIMITATION OF LIABILITIES AND EXCLUSIVE REMEDIES**</u>

So long as Purchaser is satisfying its obligations under this Agreement, Seller agrees to reasonably meet or exceed commonly accepted industry quality standards for production of microfiche.

Seller agrees to be liable for all loss of reproduction materials (Microfiche Masters and Paper Originals) in its possession up to a limit of $300.00/paper catalog original and $200.00/microfiche master original. This liability does not cover:

- Normal wear and tear on the masters during the duplication process.
- Loss or damage to paper reproduction materials during shipment to and from Seller.

Purchaser represents and warrants to Seller that Purchaser has the right to supply Seller with the information and content set forth in the materials delivered to Seller for microfiching, and that such materials do not infringe upon or misappropriate the intellectual property rights of any third party and Purchaser shall defend, indemnify and hold Seller harmless from and against any claims or demands by any such third party.

**F.**    <u>**CONFIDENTIALITY**</u>

Seller agrees to exercise reasonable caution and discretion in safeguarding Purchaser's information and materials and agrees to treat such materials with the same level of confidentiality that it treats its own materials of a similar nature. Purchaser agrees not to disclose to others any information it learns about Seller's processes or business methods for the creation of microfiche. The parties further agree that the terms of this Agreement shall be treated as confidential and not disclosed to third parties unless ordered by a court, or agreed to by the producing party prior to any such disclosure. Notwithstanding the foregoing, the parties' confidentiality obligations shall not apply to information that is publicly known at the time of disclosure to the Seller, becomes publicly known thereafter through no fault or wrongful action of the Seller and/or that is independently developed by the receiving party.

**G.**    <u>**EXCLUSIVITY**</u>

Purchaser agrees that Seller shall be the exclusive provider to Purchaser of services detailed in Article A herein for the duration of this Agreement.

**H.**    <u>**AMENDMENTS; ENTIRE AGREEMENT**</u>

This Agreement may be amended or modified only by a written instrument duly executed by authorized representatives of each party hereto. The parties agree that this Agreement is the entire agreement between them concerning the subject matter hereof, and that it supersedes any and all prior communications, understandings or agreements between them concerning such subject matter, whether oral or in writing.

Seller _____    Purchaser _____

**Page 2 of 6**

Confidential and Proprietary to the Parties

I.    **NON-ASSIGNMENT**

Except as set forth below, neither party may assign any of its rights or obligations under this Agreement without the prior written consent of the other party. Notwithstanding the foregoing, either party may assign this Agreement to an entity that acquires such party, or into which such party merges, so long as the entire Agreement, including all obligations of the party, are also assigned along with any rights hereunder. In such event, this Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns, but no assignment shall relieve the parties hereto of their respective obligations hereunder.

J.    **WRITTEN NOTICE**

All written notification(s) for approval shall be mailed to the following persons:

**As to Purchaser:**                        **As to Seller:**

Chris Spires                                 GERALD KOSBAB, PRESIDENT    GHL
The New Piper Aircraft, Inc.                 Aircraft Technical Publishers
2926 Piper Drive                             101 South Hill Drive
Vero Beach, Florida 32960                    Brisbane, California 94005-1203
Phone: 772-299-2433                          Phone: 415-330-9500

K.    **NON-WAIVER**

The failure of either party to enforce at any time or for any period of time any of the provisions of this Agreement shall not be construed as a waiver of such provision, or of the right of the party thereafter to enforce each and every provision.

L.    **APPLICABLE LAW**

The validity, construction, performance, interpretation, effect and any claimed breach of this Agreement is governed and construed in accordance with the laws of the State of New York without regard to the internal conflicts of laws, statutes or case law thereof which would otherwise govern the law applicable to this Agreement.

M.    **TAXES**

Purchaser is responsible for payment of all taxes including sales, use, personal property and any other imposed by law except those imposed on Seller as a result of income derived from this Agreement.

N.    **DISPUTE RESOLUTION**

If a dispute arises between the parties, a meeting will be scheduled with an authorized representative of each entity in order to work out any disputed issues. If such meeting does not resolve the dispute, Purchaser and Seller agree to participate in at least four hours of mediation before pursuing any other legal remedies, such as commencing litigation. Mediation involves each side of a dispute to meet with an impartial person to attempt to reach a voluntary settlement, with no formal court procedures or rules of evidence and with the mediator having no power to render a binding decision or force an agreement on the parties. The mediation shall be held with a Certified Court Mediator selecting him or her within five (5) working days from the latest edition of the certified mediator roster of the jurisdiction in which Purchaser and Seller mutually agree to conduct mediation. If not selected within five (5) days, the mediator shall be immediately selected by an authorized representative of Purchaser. The mediation shall be convened as soon as possible, but no later than twenty (20) days from the date of selection of the mediator.

In the event of a breach or default under this Agreement, in addition to all other remedies available at law or equity, the prevailing party in any mediation, arbitration or other proceedings relating to the agreement shall be

Seller ___GHL___                            Purchaser ___CS___
                                            **Page 3 of 6**

**Confidential and Proprietary to the Parties**

entitled to recover its reasonable attorneys' fees from the other party for all matters, including, but not limited to appeals.

**O.    EXCLUSION OF WARRANTIES**

EXCEPT FOR ANY EXPRESS WARRANTIES BY EITHER PARTY EXPRESSLY SET FORTH HEREIN, BOTH PARTIES EXCLUDE ANY AND ALL OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO ANY AND ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND WARRANTIES OF FITNESS FOR A PARTICULAR PURPOSE.

**P.    TERM OF AGREEMENT**

The initial term of this Agreement shall commence on _August 1_, 2005 and end on _July 31_, 2006 unless otherwise terminated under Article D or extended by amendment under Article H. The parties hereto agree that this Agreement shall be automatically extended and renewed for further periods of one (1) year each, after the expiration of the initial term or of any extended term hereof unless either party on or before thirty (30) days preceding the termination of the initial term or any extended term, shall give notice to the other in writing of the intention to terminate the Agreement at the conclusion of such term.

*[handwritten: CAL SEPTEMBER]* *[handwritten: CAL AUGUST]*

**Q.    TERMINATION**

Anything herein to the contrary notwithstanding, either party may terminate this Agreement for cause following the other party's failure to cure any breach within 30 days following written notice and Purchaser may optionally terminate this Agreement without cause and for convenience upon 90 days written notice and payment of all outstanding invoices, as well as payment of a termination fee equal to 15% of the average monthly invoice over the completed months of the Agreement multiplied times the remaining months in the Agreement term. Termination shall not be effective for "convenience" or "without cause", unless termination fee has been satisfied by Purchaser to Seller.

**Signatures:**

| **PURCHASER:** | **SELLER:** |
|---|---|
| THE NEW PIPER AIRCRAFT, INC. | AIRCRAFT TECHNICAL PUBLISHERS |
| By: *[signature]* | By: *[signature]* |
| Print name:  Chris Spires | Print Name:  GERALD KOSBAB |
| Title:    Team Leader, Technical Publications | Title:  PRESIDENT AND COO |
| Date:  *[handwritten: August 22, 2005]* | Date:  *[handwritten: August 22, 2005]* |

Seller _GAK_          Purchaser _CS_

**Page 4 of 6**

**Confidential and Proprietary to the Parties**

EXHIBIT "A"

### PRICING

Seller shall perform microfiche filming, titling, duplicating, collating and stuffing into sleeves as requested by Purchaser for the prices set forth below. Said services shall include the furnishing of all required film and sleeves.

| SERVICE | PRICE |
|---------|-------|
| Microfiche Master Production | $3.98/fiche |
| Duplicate Microfiche Production | $0.139/duplicate |
| Set-up Fee | $35.00/month |

Purchaser is responsible for all shipping related charges and shall reimburse Seller for any and all shipping related charges incurred by Seller for activities related to this Agreement, except for differential stated in Article B. Purchaser will provide written approval to Seller as to the method of shipment of the product.

**ADJUSTMENT.** Seller may adjust the prices set forth above on an annual basis to reflect any cost of living, or cost of production increases. Any such adjustment shall not result in rates that are more than five percent (5%) greater than the prior year's rates. Seller shall notify Purchaser, in writing, no later than forty-five days prior to the scheduled date of the anticipated price change.

### TURN AROUND TIMES

Seller shall use reasonable efforts to meet the following delivery schedule:

| SERVICE | TURN AROUND TIME |
|---------|------------------|
| Microfiche Master Production | Within 2 weeks of Seller receipt of information from Purchaser, which shall be provided to Seller by electronic transmission (e-mail). |
| Duplicate Microfiche Production | Within 2 weeks of written notification for approval by Purchaser of Master Microfiche |

### PRODUCTS

All applicable information as related to Purchaser's aircraft(s), including, but not limited to:

- Maintenance Manuals
- Repair Manuals
- Bulletin Set including: Alert Bulletins, Alert Service Bulletins, Service Bulletins and Service Information
- Illustrated Parts Catalogs
- Ground Support Equipment Catalogs
- List of Applicable Publications
- Flight Manual
- Parts Price List

Seller ___CdLC___

Purchaser ___OK___

**Page 5 of 6**

Confidential and Proprietary to the Parties

**Exhibit B**

**ATP Fiche Production Service Standards**

- Alpha numeric numbering  - alpha for rows, numeric for columns
- 105mm roll of film (Agfa)
- Reduction ratio of 42X (288 frames, 12 rows and 24 columns)
- Reduction ratio of 24X (98 frames, 7 rows and 14 columns)
- Negative and Positive Films
- Process 8 ½ x 11, 11 x 17 and 11 x 14 paper sizes
- Landscaped pages are filmed in 2 frames
- 0.99 to 1.12 reading density
- Minimum 160 line pairs
- Average of 150 thru 288 frames per microfiche for 42X
- Average 50 thru 98 frames for 24X
- Bell and Howell 12OT2 format discs – spacing and ½ inch for the title
- Resolution Target no lower than 4.0 line pairs
- Piper will provide logo and titles to ATP
- Title strips will have a maximum of 4 lines on a ½ inch title strip
- Piper will provide ATP grid worksheets; ATP will not be responsible for indexing

Seller _____                             Purchaser _____

**Page 6 of 6**

# Exhibit 2

# A.T.P. & NEW PIPER AIRCRAFT, Inc.
## AMENDMENT NO. 1  TO LICENSING AGREEMENT

This amendment to the Production Agreement ("Agreement") signed September, 1, 2005, between Aircraft Technical Publishers ("Licensee") and New Piper Aircraft, Inc. ("Licensor") is entered into this 1st day of July, 2006.

The Parties agree to amend the Agreement to incorporate licensing reproduction and republishing rights as follows:

### LICENSE TO REPRODUCE AND REPUBLISH
Licensor hereby grants to Licensee a nonexclusive license to reproduce, duplicate, copy and to distribute by whatever means, Licensor's Manuals and Publications of all Licensor technical publications and all revisions thereto as issued from time to time, together with the right to sell the copies of Licensor's Manuals and Publications for a term of sixty (60) months.  Licensor agrees to provide all technical publications to Licensee at no cost via digital delivery – eg email and/or FTP site.

Licensor shall be solely responsible for the accuracy, understandability, completeness, organization and layout of all content and information provided to Licensee under this Amendment.

The Parties agree to amend the Agreement to incorporate royalty payment rights as follows:

### ROYALTY PAYMENT
The Licensee agrees to pay Licensor a royalty of twelve (12) percent of the proceeds derived by Licensee from the sale of Licensor's Manuals and Publications distributed by Licensee.  The first such payment shall be made within thirty (30) days following the end of the calendar quarter during which the first sale is made hereunder.  All subsequent payments shall be made within thirty (30) days following the end of each calendar quarter thereafter.  Payments shall be accompanied by a statement certified by an officer of Licensee as to its accuracy, and including a record of the sales therein attributed to Licensor's Manuals and Publications specified in this Agreement made during the previous calendar quarter and the amount(s) due there from.

The Parties agree to amend the Agreement to incorporate subscription change policy rights as follows:

### SUBSCRIPTION CHANGE POLICY
Licensor understands that Licensee bundles Licensor content into various Licensee library products that Licensee sells on an annual subscription basis.  Additionally, Licensor understands that Licensee customers of such libraries can switch from one library product to another prior to the current library expiration date and that Licensee will credit any unused portion of the current library subscription towards the purchase of the new annual library subscription, establishing a new annual subscription term, regardless of the particular content of the libraries involved.  Licensee royalty payment to Licensor will be adjusted to reflect the credits associated with any unused portion of the current library subscription, including returns.  Net proceeds will be documented on all reporting information from Licensee to Licensor.

The Parties agree to amend the Agreement to incorporate program promotion policy rights as follows:

PROGRAM PROMOTION
Both Licensor and Licensee agree to obtain approval from the other prior to announcing cooperation or using the other's logo in products or promotional materials designed to drive sales and to, in good faith, put forth best efforts to ensure that promotional approval decisions are made in a timely manner. Notwithstanding the foregoing, to the extent that any of the content provided by Licensor hereunder contains any logo, trademark or service mark of Licensor, Licensee is hereby granted a non-exclusive license to duplicate the same in connection with any media, Service Bulletins and Temporary Revisions products created and/or distributed hereunder.

The Parties agree to incorporate the following term as follows:

TERM OF AGREEMENT
The initial term of this Agreement shall be for thirty sixty (60) months, commencing on July 1st, 2006, and ending on June 30th 2011, unless earlier terminated under Article E or extended by amendment under Article H.  The parties hereto agree that this Amendment shall be automatically extended and renewed thereafter for further periods of one (1) year each, unless either party on or before sixty (60) days preceding the termination of the initial term or any extended term, shall give notice to the other in writing of the intention to terminate the Agreement at the conclusion of such term.  Revisions to all publications identified in Article A and Exhibit 'A' will be furnished to the Licensee for twelve (12) months following any termination under the provisions of the Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the day and year first above written.

AIRCRAFT TECHNICAL PUBLISHERS

By: _Gll Koll_

Title: _PRESIDENT_

Date: _June 16, 2006_

NEW PIPER AIRCRAFT, INC.

By: _Chris Spies_

Title:  Team Leader, Technical Publications

Date: _June 16, 2006_